**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:   Sharon M. Rougier                                                        BK No: 16-10571
         Debtor                                                                   Chapter 13

---

# DECISION AND ORDER ON PAWTUCKET CREDIT UNION'S OBJECTION TO DEBTOR'S PROPOSED CHAPTER 13 PLAN

Debtor Sharon Rougier proposes a chapter 13 plan ("Plan," Doc. #22) that includes a motion to modify the claim of Pawtucket Credit Union ("PCU") secured by a second mortgage on Ms. Rougier's principal residence located at 51 Glendale Avenue, Warwick, Rhode Island ("Property"). The modification she seeks is to strip off this second mortgage entirely, rendering the claim wholly unsecured and subject to the same treatment under the Plan as proposed for all other general unsecured claims—payment of an estimated 8% dividend.[1] The rub is that PCU also holds the first mortgage on the Property. It objects to confirmation of Ms. Rougier's Plan, arguing that the Bankruptcy Code[2] does not permit her to strip off the second mortgage because the value of the Property exceeds the balance of PCU's first mortgage claim, leaving some value to secure its second mortgage claim.

The issue presented is a novel one. PCU seeks to manipulate its first mortgage claim by purportedly waiving pre-petition interest, costs, and fees to which it is entitled under the loan documents to artificially create at least one dollar in equity in the Property over and above the claim in an effort to block the avoidance of its second mortgage.[3] After extensive research, the

---

[1] "The term 'strip off' is colloquially used when, there being no collateral value for a mortgage, the entire lien is proposed to be avoided." *In re Mann*, 249 B.R. 831, 832 n.1 (B.A.P. 1st Cir. 2000). As the *Mann* panel noted, the term "strip off" is not found in the Bankruptcy Code.

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C.§§ 101, *et seq.* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37.

[3] In its Supplemental Memorandum (Doc. #40, at 2), PCU notes the parties' agreement that "if the value of PCU's first mortgage claim is under $180,200 (the agreed value of the property) then PCU's second mortgage is secured and not subject to modification. Conversely, if PCU's first mortgage claim is more than $180,200 then the second

Court was not able to find any reported decisions addressing this precise issue, and apparently neither were the parties. The parties filed memoranda of law (Doc. ## 40, 42) in support of their positions, and the Court took the matter under advisement. After considering the arguments of the parties and the applicable Bankruptcy Code provisions, the Court concludes that PCU's second mortgage claim is wholly unsecured and may be stripped off under the Plan.

**I.    Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and DRI LR Gen 109(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

**II.    Stipulated Facts**

The parties agreed to the following pertinent facts (Doc. #42-1). The Property is valued at $180,200.00 and is subject to three mortgages: PCU's first mortgage with a principal balance of $176,212.31, its second mortgage with a principal balance of $34,675.11, and a third mortgage held by Rhode Island Housing and Mortgage Finance Corporation ("RIHMFC") with a principal balance of $25,000.00. The Plan also proposes to strip off this third mortgage, and RIHMFC has not objected to confirmation of the Plan.

As of the petition filing date ("Petition Date"), in addition to the principal balance of $176,212.31 due on the first mortgage claim, there was due interest of $6,654.49, escrow payments of $1,889.60, and foreclosure costs of $1,439.09, for a total of $186,195.49. PCU seeks to "waive" the interest and costs, contending that it has reduced its first mortgage claim to $178,101.91. Through this strategy it would purportedly create $2,098.09 in equity in the Property for its second mortgage claim, thereby preventing the strip off of its second mortgage

---

mortgage is unsecured and subject to modification." The Court concurs based upon the reasoning and holding of *In re Mann*, in which the Bankruptcy Appellate Panel for the First Circuit concluded, based on §§ 506(a) and 1322(b)(2), that chapter 13 plans may strip off (void) wholly unsecured residential liens. 249 B.R. at 840.

under the anti-modification clause of Bankruptcy Code § 1322, as interpreted under *In re Mann*, 249 B.R. at 840. If this strategy is not permissible, the parties agree that Ms. Rougier would be entitled to modify the claim to a wholly unsecured general claim.

### III.     The Parties' Positions

####     A.  PCU's Objection

PCU argues that Ms. Rougier's proposal to strip off its second mortgage violates § 1322, "which limits a [d]ebtor's ability to modify claims secured [by] real estate that is the [d]ebtor's principal residence." PCU's Objection (Doc. #29), at 1. It relies upon its allegation that "there is equity to secure its second mortgage on the Debtor's principal residence." *Id*. However, as PCU has conceded, its second mortgage is secured and not modifiable only if PCU is permitted to waive the interest and costs components of its first mortgage claim. PCU maintains that it has the sole right to do so and thus establish the amount of this claim at $178,101.91. It asserts that a creditor is "not required to seek redress or enforce claims in whole or in part under the bankruptcy code and a creditor may waive its rights it would otherwise be entitled to," "may also waive its rights to retaining secured status at all," and "may voluntarily waive rights and thus modify their claim(s) in many instances, but a debtor may only modify a creditor's claim in limited circumstances specifically delineated under the code." *See* PCU's Supplemental Memorandum, at 2-3.

####     B.  Ms. Rougier's Response

Ms. Rougier's position is grounded in the definition of a "claim" under the Code. The definition, she notes, is expansive and includes all rights to which a creditor is entitled. She emphasizes that a claim "simply reflects all of the rights emanating from the underlying documents," and that under its loan documents PCU is entitled to interest and, in the event of

default, to costs and expenses incurred in enforcing the agreement. *See* Ms. Rougier's Supplemental Response (Doc. #42), at 2-3. Ms. Rougier also makes certain related policy arguments, some of which will be touched on below.

### IV.  Applicable Standard

While Ms. Rougier, as the Plan proponent, bears the burden of demonstrating that her Plan satisfies the Code's requirements for confirmation, the parties' agreement on the operative facts renders this issue purely a question of law for the Court to resolve. *See* § 1325(a) (requiring, among other things, that a plan comply with the provision of the Code); *In re Colfer*, 159 B.R. 602, 608 (Bankr. D. Me. 1993). PCU contends that the treatment of its second mortgage claim under the Plan violates the anti-modification provision of § 1322(b), and therefore, the burden rests with Ms. Rougier to persuade the Court that it does not.

### V.  Analysis

Under § 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims." The essential question here is whether PCU, by virtue of its second mortgage, is the holder of a "claim secured only by a security interest in real property that is the debtor's principal residence." If PCU's first mortgage claim equals or exceeds the value of the Property, then its second mortgage claim is *not* secured by an interest in the Property, is modifiable under the Plan, and may be stripped off. *See In re Mann*, 249 B.R. at 840. Determining the amount of PCU's first mortgage claim turns out to be rather straightforward given the parties' stipulated facts.

As a starting point, a review of the proof of claim ("POC") filed by PCU for its first mortgage claim raises doubts as to whether PCU has, as it contends, waived any portion of this

4

claim. Indeed, PCU attempts to straddle the fence and avoid any risks whatsoever from the novel approach it has pursued here. If it is unsuccessful it wants to recover every penny of the claim owed as of the Petition Date, including interest, fees and costs. While the POC lists the amount of the claim as $178,101.91, the exhibit attached to the POC, which provides a breakdown of the claim, states, "Amount of PCU claim if no waiver is allowed: $186,195.49." This gamesmanship to obtain the most favorable treatment of its disputed claim is at odds with the claim determination provisions of the Bankruptcy Code.

But even if PCU had, post-petition, unequivocally waived a portion of its first mortgage claim, the outcome would be no different. The controlling date here is the Petition Date, the date under Bankruptcy Code § 502(b) the Court must use to determine the amount of this claim. *See* § 502(b) (directing that the court shall determine the amount of a disputed claim "as of the date of the filing of the petition" and shall allow the claim in that amount).[4]

The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to" a right to payment. § 101(5). As noted, the amount of PCU's first mortgage claim must be determined based on its rights under the applicable loan documents as of the Petition Date. Here, the parties agree that as of that date the

---

[4] Section 502, providing for the allowance of claims, states that (a) a filed claim is deemed allowed unless objected to, and (b) if such an objection is made "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount," subject to certain exceptions not applicable here. In the present case, PCU filed its POC for its first mortgage claim on July 27, 2016 (Claim #3), and the deadline to object to that claim has not yet expired. While Ms. Rougier has not filed a formal objection, the Plan and the Objection squarely place the claim amount in dispute. Additionally, the Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (L) over "core proceedings" that relate to the "allowance or disallowance of claims against the estate," "estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13," and "confirmation of plans." In short, the Court is obligated to establish the amount of the first mortgage claim in considering confirmation of the Plan, and § 502 governs that determination.

balance due under the first mortgage, as provided under the loan documents, including interest, escrow, penalties, fees, and costs, is $186,195.49. This, then, is the amount of PCU's first mortgage claim pursuant to § 502, and that ends the analysis necessary to conclude that its second mortgage is wholly unsecured and subject to being stripped off under the Plan.[5]

PCU protests that it has a right to waive, post-petition, a portion of its first mortgage claim if it so chooses. This is not correct. Its rights are circumscribed by the Bankruptcy Code and it does not have an unfettered right to manipulate its claim to the detriment of Ms. Rougier and her other unsecured creditors. While it might be true that PCU is entitled to waive its right to fully enforce or collect on its claim, doing so does not change this Court's determination of the amount of the claim as $186,195.49. PCU has not produced any evidence, nor has it argued or even suggested, that it waived its right to interest and costs *before* the Petition Date. Such post-petition efforts have no effect on the Court's determination of the allowable amount of the disputed claim as of the Petition Date and the modification of the claim under the Plan.

The Court's ruling is fully aligned with one of the Bankruptcy Code's principal purposes: to provide a fresh start to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). With that in mind, bankruptcy courts should not sanction tactics that undermine that purpose or

---

[5] Code § 506 also supports this conclusion. Subsection (a) states, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." Section 506(b) further provides, "To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Accordingly, the first mortgage claim is secured up to $180,200.00, the stipulated value of the Property. Query then whether PCU is even entitled to waive interest and costs of $8,093.58 when the secured portion of the first mortgage claim is capped at $180,200.00. And even if the value of the Property were to be greater than the amount of the first mortgage claim – which PCU seeks to achieve by waiving interest and costs – § 506(b) expressly provides that there *shall* be allowed to PCU interest, fees, and costs as provided for under the applicable loan documents, up to the value of the Property. Section 506, read in conjunction with § 502, instructs that when the claim is disputed, applicable interest, fees, costs, and other charges, up the value of the Property, must be included in determining the secured status of PCU's first mortgage claim and the amount of that claim as of the Petition Date.

permit creditors to circumvent the Code's equally important goal of equitable distribution among general unsecured creditors. *See In re Rivera*, 490 B.R. 130, 136 n.6 (B.A.P. 1st Cir. 2013) ("Equality of distribution among unsecured creditors, absent an express grant of priority or cause for subordination, is a baseline principal of Chapter 13.") (quoting *In re Sharp*, 415 B.R. 803, 813 (Bankr. D. Col. 2009) (citing *In re Bentley*, 266 B.R. 229, 240 (B.A.P. 1st Cir. 2001))).

If the strip off of PCU's second mortgage were not allowed, Ms. Rougier would have to provide for full payment of the claim under the Plan, and the other unsecured creditors likely would receive no payment at all. And if PCU were permitted to carry out its scheme, it would receive far more under the Plan than it would otherwise realize outside of bankruptcy. *See In re Mann*, 249 B.R. at 837-38 ("Outside of bankruptcy, a lien with no collateral value cannot deliver any funds to the lienholder upon foreclosure. Such a lien should not deliver better rights in the bankruptcy court.") (citations omitted).[6] The windfall PCU tries to achieve contravenes the equitable distribution policy of the Bankruptcy Code and is impermissible.

## VI. Conclusion

The Court holds that the allowable amount of PCU's secured first mortgage claim is $186,195.49, and its second mortgage is wholly unsecured and can be stripped off under the Plan. The Objection is OVERRULED and the Plan is CONFIRMED. Within two weeks of entry of this Decision and Order, the Chapter 13 Trustee shall submit a proposed confirmation order

---

[6] The *Mann* panel explained: "Inasmuch as that claim has no collateral value to assure payment in a nonbankruptcy context, it is hard to square its payment in full while other unsecured claims receive much smaller dividends, if any; and even harder when one considers the Code's mandate that the Chapter 13 plan effect no unfair discrimination against any class of unsecured creditors." *Id*. at 838 (citing 11 U.S.C. § 1322(b)(1)).

providing for the allowance of PCU's first mortgage claim in the amount of $186,195.49 and the strip off of PCU's second mortgage.[7]

Date: September 16, 2016                                                                By the Court,

_Diane Finkle_
Diane Finkle
U.S. Bankruptcy Judge

---

[7] No objection to the Plan was filed by the Chapter 13 Trustee, and at the hearing he did not indicate that he had any issues with the Plan. To the extent, however, that he and Ms. Rougier's counsel agreed to more favorable terms for creditors than currently provided in the Plan, the proposed confirmation order may include such terms.